UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
MAY 0 3 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-310-GWU

RICKY D. MORGAN,                                          PLAINTIFF,

VS.                  **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

\* \* \* \* \* \* \* \*

The plaintiff appeals an administrative decision to terminate Disability Insurance Benefits (DIB) benefits originally awarded in 1994. The case is currently before the Court on cross-motions for summary judgment.

**STANDARDS APPLICABLE TO TERMINATION DECISIONS**

When the issue is the termination of benefits, the regulations establish the following eight-step test:

1. Is the beneficiary engaging in substantial gainful activity? If so, then the disability will be found to have ended. See 20 C.F.R. Section 404.1594(f)(1).

2. Provided the beneficiary is not engaged in substantial gainful activity, does the beneficiary have an impairment or combination of impairments which meet or equal the severity of impairments in the Listing? If so, then the disability must be found to continue. See 20 C.F.R. Section 404.1594(f)(2).

1

3. If the beneficiary does not equal a listing, then the question is whether there has been medical improvement (any decrease in the medical severity of one's impairments, as per 20 C.F.R. 404.1594(b)(1)).

4. Provided medical improvement has occurred, then the question is whether this has produced an increase in the residual functional capacity. If the improvement is not related to the ability to perform work activities, then one proceeds to step 5. If the improvement is related work ability, then one proceeds to step 6. See 20 C.F.R. Section 404.1594(f)(4).

5. Provided there has been no medical improvement or the improvement is not related to work ability, then one must decide whether an exception to the medical improvement standard will apply. If not, then a finding of continuing disability should be made. See 20 C.F.R. Section 404.1594(f)(5).

6. If the medical improvement is found to be related to work ability or if an exception to the medical improvement standard applies, then one considers whether the current impairments in combination are severe. If so, then one proceeds to step 7; if not, the beneficiary is no longer considered disabled. See 20 C.F.R. Section 404.1594(f)(6).

7. If the impairments are found to be severe, then one must assess the beneficiary's ability to engage in substantial gainful activity in accordance with 20 C.F.R. Sec. 404.1561. If found capable of performing past relevant work, then the disability will be found to have ended. Otherwise, one proceeds to step 8. See 20 C.F.R. Section 404.1594(f) (7).

8. Provided the beneficiary cannot perform past relevant work, then one must assess the residual functional capacity and considering the age, education, and past work experience, determine whether other work can be performed. If so, then the beneficiary is no longer disabled. Otherwise, a finding of continuing disability should be made. See 20 C.F.R. Section 404.1594(f)(8).

The standard for judicial review is whether there is substantial evidence to support the Secretary's decision that the plaintiff's condition has improved to the

extent that he can perform substantial gainful activity. Casiano, Jr. v. Heckler, 746 F. 2d 1144 (6th Cir. 1984). The Court must determine from the record upon what conditions the claimant was awarded benefits, and whether there has been any improvement in these conditions. Id. at 1148.

## DISCUSSION

The plaintiff, Ricky D. Morgan, filed an application for DIB alleging disability beginning February 23, 1992 due to a complex fracture of the right femur and a fractured ulna as a result of a motor vehicle accident. (Tr. 26-8, 61-72). He was awarded benefits in 1994 (Tr. 109-12), and his disability was found to be continuing in a 1997 Social Security Administration review. (Tr. 113-19). After another agency review in 2000, it was determined that Mr. Morgan's disability had ceased and he had the capacity to perform sedentary level work as of October 1, 2000. (Tr. 22, 134-40). The plaintiff appealed this determination. After another mishap, his leg was fractured again in May, 2002. (Tr. 468). An Administrative Law Judge (ALJ) issued a decision dated December 20, 2002, finding that the plaintiff had the capacity to perform sedentary level work between October 1, 2000 through May 4, 2002. After that time his severe fractures met the Commissioner's Listing of Impairment Section 1.05A. (Tr. 22). This appeal, therefore, concerns only the plaintiff's condition between those two dates.

Dr. Joseph Williams, a neurosurgeon, began treating Mr. Morgan in October, 1999, primarily for complaints of lower back pain, but an MRI of the

3

lumbosacral spine in January of 2000 showed only some straightening and spasm, and Dr. Williams indicated that "he does not seem to have anything neurosurgical at this time." (Tr. 293-6). He prescribed narcotic pain medication and a muscle relaxer, however.

Right femur x-rays in March, 2000, after the plaintiff had fallen, showed no recent fracture or dislocation, an old healed fracture of the distal shaft, and a partially healed fracture of the proximal shaft, both fixed by rods in good position and alignment. (Tr. 259). X-rays of the right knee and right tibia showed no significant abnormalities. (Tr. 260).

Dr. Peter Bales, an orthopedist, treated the plaintiff beginning in June, 2000 for complaints of pain in the right hip and the right lateral thigh above the knee and in the knee itself. (Tr. 288). Mr. Morgan complained of numbness in his right foot for the past year, stiffness and pain of the right knee, hip locking, and previous forearm surgery. (Id.). The physician's examination showed a well healed incision on the lateral aspect of the thigh, good range of motion of the hip with exquisite tenderness over the trochanteric bursa, generalized tenderness of the thigh, medial joint line pain but a range of motion of the knee from 0 to 135 degrees, retropatellar tenderness with no laxity, and a negative straight leg raising examination. (Id.). X-rays of the femur and the hip were reviewed, and Dr. Bales interpreted them as showing an intramedullary nail of the femur with a segmental fracture, which appeared to be healed "with a lot of callus formation." (Tr. 288-9). However, Dr.

4

Morgan

Bales obtained a bone scan which was consistent with increased uptake in the proximal right femur, which the radiologist wrote "suggest[s] non-union." (Tr. 290) Dr. Bales then attempted to have an "indium scan" performed, but this was not possible due to a low white blood cell count. (Tr. 285-7). Therefore, it would appear that the question of possible non-union was unresolved.

Dr. Williams saw the plaintiff in July and October, 2000 for his low back pain, and indicated there were no changes in this regard, while stating that Dr. Bales was still "working him up for his hip pain." (Tr. 291-2). Neither Dr. Bales or Dr. Williams listed any functional restrictions.

The only evidence from a medical source regarding functional capacity during the relevant period is from a state agency reviewer, Dr. P. Saranga, who reviewed the evidence on October 25, 2000 and concluded that Mr. Morgan would be capable of performing light level exertion, including standing and walking six hours in an eight-hour day, sitting six hours in an eight-hour day, having no restrictions on pushing or pulling, never climbing ladders, ropes, or scaffolds, and occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. (Tr. 298-305). He also indicated that Mr. Morgan had a limited ability to reach overhead and needed to avoid concentrated exposure to vibration. (Id.). Dr. Saranga cited the June, 2000 x-rays showing a healed right femur fracture and the examinations by Dr. Bales and Dr. Williams, as well as the results of the MRI scans obtained by the latter. (Tr. 300). As this is the only opinion by a medical

5

source prior to the plaintiff's May, 2002 fracture, it must be the basis for the ALJ's determination that Mr. Morgan was capable of performing a full range of sedentary level work. (Tr. 22)

However, Social Security Ruling 96-9p provides that restrictions on balancing, even when standing or walking on level terrain, may cause a significant erosion of the unskilled sedentary occupational base, and that "it is important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base." SSR 96-9p, p. 7. The Ruling adds that consultation with a vocational resource may be appropriate in some cases. Id. Furthermore, the ruling goes on to state that, while a restriction to occasional stooping would by itself only minimally erode the unskilled occupational base of sedentary work, in the present case the claimant has other non-exertional impairments in addition to "occasional" stooping.

Since Dr. Saranga's functional assessment did not specify limitations on balancing as described in SSR 96-9p, and since the plaintiff also had a restriction to occasional stooping, reliance on the grids was inappropriate in this case. A remand will be required in order to obtain testimony from a vocational expert.

The decision will be remanded for further consideration.

This the ____3____ day of May, 2006.

*signature*
G. WIX UNTHANK
SENIOR JUDGE